UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 05 CR 400 |
| | ) | |
| MICHAEL NELSON | ) | Hon. Ruben Castillo |
| | ) | |

FILED
JUN 0 8 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COU...

FILED
JUN 0 8 2005
JUN 08 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, MICHAEL NELSON, and his attorney, ROGER DUSBERGER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed by Rule 11(c)(1)(C), as more fully set forth in Paragraph 16 below.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 05 CR 400.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, MICHAEL NELSON, and his attorney, ROGER DUSBERGER, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the information in this case with two counts of using a communication facility, namely, a telephone, in furtherance of a drug trafficking crime, in violation of Title 21, United States Code, Section 843.

2. Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to the information in this case.

5. Defendant will plead guilty because he is in fact guilty of the charges contained in the information. In pleading guilty, defendant admits the following, which establishes his guilt and relevant sentencing facts beyond a reasonable doubt:

Defendant NELSON acknowledges that on or about June 12, 2004, at approximately 10:34 a.m. and again at approximately 12:40 p.m., in the Northern District of Illinois, Eastern Division, he knowingly and intentionally did use a communication facility, namely a telephone, in committing and in causing and facilitating the commission of a felony violation of Title 21, United States Code, Sections 841(a)(1) and 846, namely, possession with intent to distribute mixtures containing cocaine and cocaine base, distribution of mixtures containing cocaine and cocaine base, and conspiracy to distribute and to possess with intent to distribute mixtures containing cocaine and cocaine base.

More specifically, in approximately the spring and summer of 2004, NELSON purchased powder cocaine from James Cross on at least three occasions. NELSON kept some of this powder cocaine for his own personal use, and cooked the remaining powder cocaine into crack cocaine. NELSON then sold the crack to other individuals.

On or about June 11, 2004, which was at least the second time NELSON obtained cocaine from Cross in 2004, NELSON purchased approximately ½ ounce of powder cocaine from Cross. NELSON kept half of this powder cocaine for own his personal use, and he cooked the remainder of the powder cocaine into crack cocaine, which crack NELSON later sold to various individuals in Indianapolis, Indiana.

In two telephone calls on June 12, 2004, NELSON spoke with Cross about the cocaine NELSON had just purchased to inquire about the cocaine's quality. In one call, beginning at approximately 10:34 a.m., NELSON told Cross that he had weighed the cocaine; that he was doing it "half and half," meaning that he was keeping half of it as powder and cooking the other half into crack; and that just by looking at the cocaine NELSON could tell that there was some "soda" or some "isotol" on it. Cross asked if the cocaine became "hard," and NELSON replied that it "took a minute," but it "dried on up," meaning that the powder cocaine did eventually dry up and become "hard" or crack cocaine after NELSON cooked it. Cross told NELSON that he was going to "do one in a minute," meaning that he too was going to attempt to cook some powder cocaine into crack, and that Cross would let NELSON know what happens with it.

In a second call, taking place at approximately 12:40 p.m., NELSON and Cross continued to talk about the cocaine NELSON received from Cross. Cross informed NELSON that he saw what NELSON was "talking about" regarding the cocaine, but that the supplier said "that's how it is." NELSON asked Cross if Cross had anybody test the cocaine, and Cross replied that he had not. NELSON said that he did have some people test the cocaine, and that they said the cocaine was a "little better than the last bunch," but that it was messing up "their pipes." Cross told NELSON that he passed along NELSON's concerns about the cocaine to the supplier, and the supplier said that he

3

did not add any extra mix onto the cocaine. Cross also told NELSON that he let the supplier do it, meaning attempt to cook the powder into crack cocaine, and further complained that he would not be able to make money off poor quality cocaine that would not cook up into crack.

6. For purposes of calculating the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

(a) Pursuant to Guideline Sections 1B1.3, 2D1.1(a)(3), and 2D1.1(c)(7), the parties agree that the base offense level is level 26 based upon the amount of drugs described above, including the 7 grams of crack cocaine and the additional powder cocaine obtained by defendant from Cross.

(b) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline Section 3E1.1, a 2-level reduction in the offense level is appropriate.

(c) Defendant timely provided complete information to the government concerning his own involvement in the offense and timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, within the meaning of Guideline Section 3E1.1(b); an additional 1-level reduction in the offense level is therefore appropriate, provided the court determines the offense level to be 16 or greater prior to the operation of Guideline Section 3E1.1(a).

(d)　Based on the facts presently known to the government, defendant has the following criminal history, which amounts to 8 criminal history points and a criminal history category of IV:

(i)　On or about July 2, 1997, defendant was convicted of conspiracy to possess with intent to distribute cocaine in the Northern District of Illinois (97 CR 318), and he was later sentenced to 36 months' imprisonment and 5 years' supervised release on February 26, 1998. On or about August 1, 2001, defendant's supervised release was revoked as result of a violation, and he was sentenced to 4 months' imprisonment and 3 years' supervised release. Defendant began these 3 years' of supervised release on or about January 18, 2002, after being released by the Bureau of Prisons. The defendant receives 3 criminal history points for this conviction pursuant to USSG § 4A1.1(a).

(ii)　On or about August 1, 2001, defendant was convicted of possession of cocaine in Indianapolis, Indiana, and he was sentenced to 18 months' imprisonment, with 321 days suspended and to run concurrent with his federal sentence for violating supervised release. Defendant was paroled on January 18, 2002, and he was discharged from his sentence on January 18, 2003. The defendant receives 3 criminal history points for this conviction pursuant to USSG § 4A1.1(a).

(iii)　Because defendant committed the instant offense while under a criminal justice sentence, namely a term of supervised release, defendant receives 2 additional criminal history points pursuant to USSG § 4A1.1(d).

(e) The government's predicted, preliminary sentencing guideline range will be 70-87 months' incarceration based upon the calculations set forth above, which include an expected offense level of 23 and criminal history category of IV.

(f) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

8. Defendant understands that, in imposing the sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. Defendant understands that each count to which he is pleading guilty carries the following penalties: a maximum penalty of 4 years' imprisonment, a maximum fine of $ 250,000,

6

a term of supervised release of not more than one year, and any restitution and forfeiture ordered by the Court.

10. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $200 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

11. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

7

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

(f) Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Plea Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that she has been prosecuted by way of information.

12. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant also understands that a

8

defendant may appeal his sentence under certain circumstances pursuant to Title 18, United States Code, Section 3742. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

13. Defendant agrees he will fully and truthfully cooperate with the government in any matter in which he is called upon to cooperate.

(a) Defendant agrees to provide complete and truthful information in any investigation and pre-trial preparation, and complete and truthful testimony, if called upon to testify, before any federal grand jury and United States District Court proceeding, and any related civil administrative or court proceeding.

(b) Defendant further agrees to cooperate fully and truthfully in identifying and forfeiting tainted assets subject to forfeiture, regardless where they may have been transferred or hidden.

(c) Defendant agrees to postpone his sentencing until after the conclusion of the prosecution of other defendants in this investigation, including the defendants in 04 CR 1090.

14. Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

15. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

16. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation and, if the defendant has provided full and truthful cooperation, shall move the Court, pursuant to Guideline § 5K1.1 and Title 18, United States Code, Section 3553(e), to depart from the applicable sentencing guidelines range, and to impose the sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. However, this Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment of 75% of the low end of the applicable sentencing guideline range. The defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. Other than this agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth herein, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(c)(3), (4) and (5). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

17. Defendant understands that his compliance with each part of this Plea Agreement extends throughout his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

18. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

19. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

20. Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

21. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: June 8, 2005

_____
PATRICK J. FITZGERALD
United States Attorney

_____
JOHN LAUSCH
Assistant United States Attorney

_____
MICHAEL NELSON
Defendant

_____
ROGER DUSBERGER
Attorney for Defendant